HALL, ADMX., APPELLANT, *v.* CITY OF YOUNGSTOWN, APPELLEE.

(No. 4708—Decided August 29, 1967.)

*Mr. Daniel L. Rossi,* for appellant.

*Mr. P. J. Melillo,* director of law, and *Mr. William J. Higgins,* for appellee.

JONES, P. J.   About four a. m. on December 31, 1963, a fire broke out at the residence of Mary and Joshua Hall, in the city of Youngstown. The Fire Department of the city of Youngstown was summoned. Shortly thereafter, fire fighting men and equipment arrived upon the scene of the fire.

A water hydrant belonging to the city of Youngstown was located across the street from the burning home at approximately seventy-five to one hundred feet distant. The morning was bitter cold, with the temperature near the zero mark. The men on the first fire truck to arrive coupled hoses to the hydrant; however, it developed that the hydrant was mechanically inoperative. That truck and other equipment had to use a hydrant quite some distance away, which caused a delay. During the interim, water from tanks was sprayed upon the conflagration by means of a hose.

As the result of the fire, a most tragic event occurred. Four children perished. Joshua Hall, Jr., a minor, died in the fire, and suit was brought by the administratrix of his estate, Mary Hall,

against the city of Youngstown. The administratrix charged the city of Youngstown with negligence in that the water department, under whose control and supervision rest the hydrants, failed in its duty to Joshua Hall, Jr.; and the negligence was the proximate cause of the death; all of which plaintiff claims gave rise to this cause of action.

The case came on for jury trial in the Mahoning County Court of Common Pleas. At the conclusion of plaintiff's case in chief, defendant's motion for a directed verdict was sustained by the trial judge. It is from that final order that appeal has been perfected to this court.

Only one error is assigned:

"That the trial court contrary to law directed a verdict against the plaintiff and in favor of the defendant on the basis that the defendant, city of Youngstown, was engaged in a governmental function and accordingly is not answerable for its negligence."

The issue is clear: According to the testimony, was the city of Youngstown engaged in a govermental capacity or proprietary capacity?

If the action of the city was proprietary in scope, then a review of the testimony is necessary to determine if the case should have gone to the jury to determine proximate cause and damages. As under the facts of this case, the doctrine of *res ipsa loquitur* would then negate the issue of negligence. Though this doctrine was not pleaded, the testimony certainly makes the doctrine applicable and negligence inferred. If, on the other hand, the action of the city was governmental in scope, then, of course, the trial judge was correct in sustaining the motion made by the city of Youngstown for a directed verdict.

Whether the performance of various activities by a municipality is governmental or proprietary frequently depends on the peculiar facts of the particular case. *Hyde* v. *Lakewood*, 2 Ohio St. 2d 155. Plaintiff concedes, and all agree, that fire fighting by the Fire Department of the city of Youngstown is an operation that is strictly governmental in nature and the city is not liable, in tort, for consequential injury to property or persons, including death. Likewise, it is well settled in Ohio that a municipality operating a water system is engaged in a proprietary rather than a governmental capacity.

"In the construction and maintenance of a system for supplying water to its inhabitants, a municipality acts in proprietary capacity." *Barberton* v. *Mikech,* 128 Ohio St. 169, paragraph two of the syllabus.

The testimony in this case was quite clear that the Fire Department of the city of Youngstown did not construct or maintain the inoperative hydrant, or any other hydrants for that matter. These duties are those of the Water Department of the city of Youngstown.

The conflict that arises as the result of the dual role of a municipality appeared in the recent case of *Gabris* v. *Blake,* 9 Ohio St. 2d 71. There, Roger Gabris, as a pedestrian on a Columbus city sidewalk, was struck by a piece of metal protruding from a headlight unit of a police cruiser. Plaintiff was injured and suit followed. A demurrer to the petition was sustained by the trial court. By a four-to-three decision, the Ohio Supreme Court approved the sustaining of the demurrer on the basis that a muncipality is absolved from liability for the negligence of members of its police department engaged in police duties. Section 701.02, Revised Code. Further, Section 723.01, Revised Code, requiring a city to keep streets and sidewalks, etc., open, in repair and free from nuisance, embraces only those conditions affecting the physical conditions existing in or on highways, streets, or public grounds themselves. Section 723.01 Revised Code, was strictly construed in favor of the municipality engaged in the exercise of governmental operations. Thus, the Ohio Supreme Court reconciled two statutes (Sections 701.02, and 723.01, Revised Code) under a unique factual situation.

A similar problem exists in the case at bar; however, here we are dealing with the city as a fire fighter and the city in the business of supplying water. We are unable to find any Ohio case law on point; accordingly, we must consider this to be a case of first impression.

There are cases from other states cited by plaintiff that would seem to favor the position that under the facts of the instant case the proximate cause of the death of the child was due to the negligence of the city of Youngstown, while acting in a proprietary capacity. Counsel for plaintiff has made it quite clear that he is not raising as an issue the governmental capacity of the Fire Department of the city of Youngstown in fighting

a fire. This is not the point at all. The point urged here is that the city, as an operator of a water system, was acting in a proprietary fashion and that the case should have gone to the jury to determine negligence, if any; proximate cause, and damages.

On the other side of the table, Mr. Higgins, able counsel for the city of Youngstown, argues that the city of Youngstown's water department is not involved in the case; that we are dealing with the extinguishment of a fire; and, as such, the city was acting in a governmental capacity and not responsible, in tort, for the loss of the life of Joshua Hall, Jr. See *Wheeler* v. *Cincinnati*, 19 Ohio St. 19; *Aldrich* v. *Youngstown*, 106 Ohio St. 342.

Counsel for the city argues, secondly, that if he is mistaken in the premise that the sovereign is immune from suit in this case, then the testimony at the trial clearly showed no negligence upon the city that could proximately have caused the death. This is in counter to plaintiff's contention that a jury question existed as to these issues. Just as counsel for the plaintiff has cited cases from other jurisdictions to support his theory of recovery, counsel for the defendant has cited cases from other jurisdictions to support his theory of defense. See *Steitz* v. *Beacon*, 295 N. Y. 51, 64 N. E. 2d 704; *Trustees of Jennie De Pauw Memorial Methodist Episcopal Church* v. *New Albany Waterworks*, 193 Ind. 368, 140 N. E. 540.

The recent case of *Clark* v. *Meigs Equipment Co.*, 10 Ohio App. 2d 157, has been considered by this court and found not to be applicable.

What is the purpose of a hydrant? Certainly, it is for fighting fires. At the same time, however, it is attached to the water system. In this case, the water system was under the exclusive control and maintenance of the water department. Both sides agree that sovereign immunity does not apply to a proprietary operation, but the problem remains: what "hat" was the city wearing at the time of the fire. It has been held by the Ohio Supreme Court that whether the performance of various activities by a municipality is governmental or proprietary depends upon the circumstances of the particular case (*Hyde case, supra*). After all what started this chain of events after the arrival of the firemen? The hydrant didn't work! That responsibility rested upon the city water department in this case.

We hold, therefore, as a matter of law, that it was the responsibility of the Water Department of the city of Youngstown, under whose supervision, maintenance and control rested the inoperative hydrant; and, having failed to respond to that duty, the city of Youngstown, operating in a proprietary capacity, was negligent pursuant to the doctrine of *res ipsa loquitur*.

Having held, as a matter of law, that the inoperative hydrant, under the exclusive control and maintenance of the Water Department of the city of Youngstown, made the city negligent following the doctrine of *res ipsa loquitur,* we must now consider the testimony to determine the issue of proximate cause. We conclude that this issue was decided in favor of the city by the trial court wherein, in its journal entry, the judge sustained the motion for directed verdict "for other reasons" (other than the theory of sovereign immunity). The firemen testified that they arrived at the fire three and one-third minutes after the alarm was sounded and that the house was unsavable, and, further, that water from other sources was played upon the fire with the thought in mind of keeping the fire from spreading. These firemen were plaintiff's witnesses. This all appears in a supplement to the bill of exceptions.

On the other hand, Mr. Johnson testified for the plaintiff that the fire was confined to the first floor when the first fire trucks arrived. Mr. Jackson testified substantially the same, *i. e.*, the fire had not reached the second floor when the first fire truck arrived. Joshua Hall, Sr., and his wife testified, also, that the fire was confined to the first floor when the firemen first arrived.

The testimony must be construed most favorably to the plaintiff. Negligence in this case is inferred under the doctrine of *res ipsa loquitur.* (It may or may not be applicable in a subsequent new trial.) The question of proximate cause and damages is one that should have been left for jury determination under proper instructions.

The judgment is reversed and the case remanded for further proceedings according to law.

*Judgment reversed.*

LYNCH and O'NEILL, JJ., concur.