HAAS ET AL., APPELLEES, *v.* HAYSLIP ET AL.; CITY OF AKRON, APPELLANT.

[Cite as Haas v. Akron (1977), 51 Ohio St. 2d 135.]

(No. 77-82—Decided July 20, 1977.)

*Mr. Richard Sternberg,* for appellees.

*Mr. John E. Holcomb,* director of law, and *Mr. Charles W. Zindle,* for appellant.

*Per Curiam.* The issue presented for review is whether governmental immunity from tort liability is still available as a defense for political subdivisions of the state in view of the recent enactment by the General Assembly of the Court of Claims Act, R. C. 2743.01 *et seq.*

Except as otherwise provided by statute, municipal corporations are immune from liability in the performance of their governmental functions. See, *e. g., Broughton* v. *Cleveland* (1957), 167 Ohio St. 29. Since 1854, however, this court has consistently held that, even absent statutory authorization, the defense of immunity is not available to a municipality for negligence in the performance of proprietary, as opposed to governmental, functions. The maintenance and operation of a police department by a municipality is a governmental function. *Gabris* v. *Blake* (1967), 9 Ohio St. 2d 71.

R. C. 2743.02(A) provides:

"The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the Court of Claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, subject to the limitations set forth in this chapter. To the extent that the state has previously consented to be sued, this chapter has no applicability."

In pertinent part, R. C. 2743.01 provides that:

"As used in Chapter 2743 of the Revised Code:

"(A) 'State' means the state of Ohio, including, without limitation, its departments, boards, offices, commissions,

agencies, institutions, and other instrumentalities. It does not include political subdivisions.

"(B) 'Political subdivisions' means municipal corporations, townships, counties, school districts, and all other bodies corporate and politic responsible for governmental activities only in geographic areas smaller than that of the state to which the sovereign immunity of the state attaches."

In the insant cause, the Court of Appeals held that "R. C. Chapter 2743 does not specifically grant the state's political subdivisions any immunity. Therefore, by virtue of the state's waiver of its immunity, such immunity can no longer be claimed by a political subdivision." The Court of Appeals reasoned that "[o]nce the sovereign waives, the judicial doctrine falls because there is no longer a source from which the subdivisions can derive their immunity."

This holding of the Court of Appeals is in error. In 1912, Section 16, Article I, of the Ohio Constitution was amended by adding: "Suits may be brought against the state, in such courts and in such manner, as may be provided by law." The amendment is not self-executing, and statutory authority is required as a prerequisite to the bringing of suits against the state. *Raudabaugh* v. *State* (1917), 96 Ohio St. 513. Subsequent cases have interpreted Section 16, Article I, as a technical abrogation of the theretofore judicial doctrine of sovereign immunity, although ineffective without the required legislative consent. Thus, the defense of sovereign immunity has been transformed into the defense of "lack of consent." See *Krause* v. *State* (1972), 31 Ohio St. 2d 132.

Further, R. C. 2743.01(A) defines "state" within the context of R. C. Chapter 2743 and carefully excludes "political subdivisions" from that definition. The General Assembly first clearly separated "political subdivisions" from "state" and then used the present tense in R. C. 2743.01(B) in describing bodies which enjoy sovereign immunity: "sovereign immunity * * * *attaches.*" This is seem-

ingly contrary to the derivative immunity required by the Court of Appeals.

.The Court of Appeals interpreted R. C. 2743.01(A) and (B) and 2743.02(A) as "meaning that the state has waived its immunity from liability but declined to permit political subdivisions to be sued in the Court of Claims. If * * * [political subdivisions] cannot be sued in the Court of Claims, they may be sued in any court of record as any other party might be sued." The Court of Appeals noted that its construction of the statutes "means, of course, that R. C. 2743.02(B) is merely superfluous legislation as it is embodied in R. C. 2743.02(A)."

We reject this reasoning. R. C. 2743.02(A) waives the *state's* immunity from liability. There would be little reason for the General Assembly to make a detailed distinction between "state" and "political subdivision" in R. C. 2743.01 if the effect of 2743.02(A) were to put both the state *and* political subdivisions on the same plane with regard to waiving sovereign immunity.

If the General Assembly intended to do as the Court of Appeals claims, it could have stated unequivocally that both the state and political subdivisions no longer have the defense of sovereign immunity, and then prescribed the procedure for suing the "state" and specifically provided that "political subdivisions" shall be amenable to suit in the ordinary course of law. This the General Assembly chose not to do.

Further evidence that the legislative intent was not to waive sovereign immunity as a defense for political subdivisions is contained in R. C. 2743.02(B), which provides, in part, that "[t]he state hereby waives the immunity from liability of all hospitals owned or operated by * * *political subdivisions and consents for them to be sued * * *." Since the demise of charitable immunity, any immunity of these hospitals is derived from the immunity afforded to political subdivisions which create, own and operate them. If R. C. 2743.02(A) had already abrogated sovereign immunity of political subdivisions, then R. C. 2743.02(B) is su-

perfluous. The last sentence of Subdivision (B)[1] is a codification of this court's holding in *Sears* v. *Cincinnati* (1972), 31 Ohio St. 2d 157, recognizing that operation of a hospital by a municipal corporation is a proprietary function, and thus immunity is not available to the hospital or municipality. The first sentence of Subdivision (B) is an expansion of *Sears* and a legislative reversal of *Wolf* v. *Ohio State Univ. Hosp.* (1959), 170 Ohio St. 49, and *Hyde* v. *City of Lakewood* (1965), 2 Ohio St. 2d 155.

If R. C. Chapter 2743 were intended to completely abolish immunity to political subdivisions, then, logically, the General Assembly would have repealed R. C. 701.02 (waiving immunity of municipalities for certain acts of policemen and firemen in relation to operating a motor vehicle), R. C. 723.01 (concerning responsibility of municipality for maintenance of nuisance in public streets), R. C. 305.12 (liability of county in repair of bridges or roads), and several other statutes as superfluous.

In conclusion, R. C. 2743.01 and 2743.02 are forthright and unambiguous, and permit facile discernment of the legislative intent to preserve the defense of sovereign immunity to political subdivisions except as otherwise expressed by the General Assembly. Appellees fail to cite authority that the state may not selectively waive, through the General Assembly, sovereign immunity with regard to political subdivisions.

The judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, P. BROWN and LOCHER, JJ., concur.

CELEBREZZE, W. BROWN and SWEENEY, JJ., dissent.

---

[1] R. C. 2743.02(B) reads in full:

"The state hereby waives the immunity from liability of all hospitals owned or operated by one or more political subdivisions and consents for them to be sued, and to have their liability determined in the Court of Common Pleas, in accordance with the same rules of law applicable to

WILLIAM B. BROWN, J., dissenting. It is something of an anomaly that the common-law doctrine of sovereign immunity which is based on the concept that "the king can do no wrong" was ever adopted by the American courts. Nonetheless it was, and the anomaly of its adoption was compounded when the doctrine was applied to municipalities in *Mower* v. *Leicester* (1812), 9 Mass. 247, on the rationale that it is preferable for an individual to sustain injury than for the public to suffer inconvenience.[3] Anomalous or not, however, the doctrine of municipal immunity was soon judicially adopted in virtually every American jurisdiction, including Ohio.[4] The question raised by the instant cause is whether it should be retained.[5]

suits between private parties, subject to the limitations set forth in this chapter. This chapter is also applicable to hospitals owned or operated by political subdivisions which have been determined by the Supreme Court to be subject to suit prior to the effective date of this section."

[2] "* * * At the earliest common law the doctrine of 'sovereign immunity' did not produce the harsh results it does today. It was a rule that allowed substantial relief. It began as the personal prerogative of the king, gained impetus from sixteenth century metaphysical concepts, may have been based on the misreading of an ancient maxim, and only rarely had the effect of completely denying compensation. How it became in the United States the basis for a rule that the federal and state governments did not have to answer for their torts has been called 'one of the mysteries of legal evolution.' (Borchard, Governmental Responsibility [sic] in Tort, 34 Yale L. J., 1, 4.)" *Muskopf* v. *Corning Hospital District* (1961), 55 Cal. 2d 211, 214-215, 359 P. 2d 457, 458-459. It has also been suggested that sovereign immunity is based on "the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." *Kawananakoa* v. *Polybank* (1907), 205 U. S. 349, 353.

[3] The common-law precedent for municipal immunity (*Russell* v. *Devon* [1788], 100 Eng. Rep. 359), denied recovery because of the absence of a "corporation fund" from which satisfaction could be made. Since the *Mower* case did not deal with a lack of a corporate fund, it was essentially decided on the grounds of which party should bear the loss.

[4] Borchard, Government Liability in Tort (1924), 34 Yale L. J. 1, 42.

[5] Although the instant cause is before this court because of a conflict and the question certified by the Court of Appeals was "whether

The majority of American jurisdictions have held that it should not.⁹ In doing so they have rejected the argument that abolishing immunity might cause a flood of litigation (*Ayala* v. *Philadelphia Bd. of Public Edn.* [1973], 453 Pa. 584, 595, 305 A. 2d 877, 882) ; emphasized the incongruous results of basing immunity on the governmental or proprietary nature of a municipality's acts (*Hargrove* v. *Cocoa*

governmental immunity from tort liability is still available as a defense for the political subdivisions of the state of Ohio or did the legislature abrogate all governmental immunity from tort liability when it enacted the Court of Claims Act (R. C. 2473.01 *et seq.*) ?", certification of the record because of a conflict brings in the entire case (*Pettibone* v. *McKinnon* [1932], 125 Ohio St. 605), and this court may, if it chooses to, rule on the validity of the judicial doctrine of municipal immunity.

⁹Jurisdictions limiting immunity by judicial decisions include: *Spencer* v. *General Hospital of District of Columbia* (1969), 138 U. S. App. D. C. 48, 425 F. 2d 479; *Jackson* v. *City of Florence* (1975), 294 Ala. 592, 320 So. 2d 68; *Fairbanks* v. *Schaible* (Alaska 1962), 375 P. 2d 201; *Veach* v. *Phoenix* (1967), 102 Ariz. 195, 427 P. 2d 335; *Parish* v. *Pitts* (1968), 244 Ark. 1239, 429 S. W. 2d 45; *Muskopf* v. *Corning Hospital District* (1961), 55 Cal. 2d 211, 11 Cal. Rptr. 89, 359 P. 2d 457; *Evans* v. *Bd. of County Commrs. of County of El Paso* (1971), 174 Colo. 97, 482 P. 2d 968; *Hargrove* v. *Cocoa Beach* (Fla. 1957), 96 So. 2d 130; *Molitor* v. *Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N. E. 2d 89; *Brown* v. *Wichita State Univ.* (1975), 217 Kan. 279, 540 P. 2d 66; *Haney* v. *Lexington* (Ky. 1964), 386 S. W. 2d 738; *Bd. of Commrs. of Port of New Orleans* v. *Splendour S. & E. Co.* (La. 1973), 273 So. 2d 19; *Davies* v. *Bath* (Me. 1976), 364 A. 2d 1269; *Sherbutte* v. *Marine City* (1964), 374 Mich. 48, 130 N. W. 2d 920; *Spanel* v. *Mounds View School Dist. No. 621* (1962), 264 Minn. 279, 118 N. W. 2d 795; *Brown* v. *City of Omaha* (1968), 183 Neb. 430; 160 N. W. 2d 805; *Rice* v. *Clark County* (1963), 79 Nev. 253, 382 P. 2d 605; *Merrill* v. *Manchester* (1974), 114 N. H. 722, 332 A. 2d 378; *B. W. King, Inc.*, v. *West New York* (1967), 49 N. J. 318, 230 A. 2d 133; *Hicks* v. *State* (1975), 88 N. M. 588, 544 P. 2d 1153; *Kitto* v. *Minot Park District* (N. D. 1974), 224 N. W. 2d 795; *Ayala* v. *Philadelphia Bd. of Public Edn.* (1973), 453 Pa. 584, 305 A. 2d 877; *Becker* v. *Beaudoin* (1970), 106 R. I. 562, 261 A. 2d 896; *Long* v. *Weirton* (W. Va. 1975), 214 S. E. 2d 832; *Holytz* v. *Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618.

A number of other jurisdictions have done away with municipal immunity by statute. See the appendix to Restatement of Torts 2d, Section 895(C), Comment *f* (Tent. Draft No. 19, 1973).

*Beach* [Fla. 1957], 96 So. 2d 130); and decried a doctrine which imposes "the entire burden of damage resulting from the wrongful acts of the government * * * upon the single individual who suffers the injury * * *." *Barker* v. *Santa Fe* (1943), 47 N. M. 85, 88, 136 P. 2d 480, 482.

The arguments marshalled by the courts of other jurisdictions apply to Ohio's municipal immunity doctrine as well. This court does not need to defer to the General Assembly in this area, because Ohio's sovereign immunity for municipalities was judicially created (see *State* v. *Franklin Bank of Columbus* [1840], 10 Ohio 91; *Western College of Homeopathic Medicine* v. *Cleveland* [1861], 12 Ohio St. 375; and *Thacker* v. *Bd. of Trustees of Ohio State Univ.* [1973], 35 Ohio St. 2d 49, 67-68 [Justice William B. Brown, dissenting]), and judicially-created doctrines may be judicially abolished. (See *Sears* v. *Cincinnati* [1972], 31 Ohio St. 2d 157, 161, overruling paragraph one of the syllabus in *Hyde* v. *Lakewood* [1965], 2 Ohio St. 2d 155; *Muskopf* v. *Corning Hospital District* [1961], 55 Cal. 2d 211, 359 P. 2d 457; *Molitor* v. *Kaneland Community Unit District No. 302* [1959], 18 Ill. 2d 11, 25, 163 N. E. 2d 89.)

Moreover, where the legitimate purpose of a doctrine no longer exists and its application produces unjust results, it should not be retained on the grounds of *stare decisis.* As Justice Holmes said:

"It is revolting to have no better reason for a rule than that it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Oliver Wendell Holmes, Collected Legal Papers (1920), at page 187. In *Avellone* v. *St. John's Hospital* (1956), 165 Ohio St. 467, 473-475, this court rejected *stare decisis* and charitable immunity for hospitals on the grounds that the charitable immunity rule had outlived its purpose in light of the "social consciousness of present day government," inroads which had already been made on the charitable immunity doctrine and the availability of insurance. Given the legislative and

judicial inroads on municipal immunity' and the availability of insurance and other types of funding for municipalities, the same arguments apply to the instant cause.

In addition, the inequities arising out of judicial attempts to limit immunity by classifying municipal functions as proprietary rather than governmental are as dramatic in Ohio as in any other jurisdiction. Indeed, "it is impossible to reconcile all the decisions of this court dealing with the subject of governmental and proprietary functions in relation to a municipality." *Eversole* v. *Columbus* (1959), 169 Ohio St. 205, 208. This court's *ad hoc* approach to the governmental-proprietary doctrine and the General Assembly's enactment of R. C. 701.02 and 723.01 have, in the name of *limiting* immunity, placed the individual in the following situation. He may risk injury by walking down a street where a sewer is being *maintained* or by attending a program at a municipal auditorium or by unwittingly placing himself in the range of a policeman driving negligently and know that he may sue the municipality for his injuries, *Portsmouth* v. *Mitchell Manufacturing Co.* (1925), 113 Ohio St. 250. See *State, ex rel. White,* v. *Cleveland* (1932), 125 Ohio St. 230; R. C. 701.02.[8] If, however, he walks down a street where a sewer is being *constructed,* or visits a municipal zoo, or, as in the instant cause, he unwittingly places himself in the range of a policeman who allegedly negligently shoots him, he has no recourse against the city. *Hutchinson* v. *Lakewood* (1932), 125 Ohio St. 100; *Crisafi* v. *Cleveland* (1959), 169 Ohio St. 137; *Gabris* v. *Blake* (1967), 9 Ohio St. 2d 71.[9] If such arbitrary and irrational re-

[7] In addition to developing the proprietary-governmental function doctrine, this court has extended the definition of a nuisance under R. C. 723.01 to include traffic lights, and the General Assembly has enacted R. C. 701.02 (which denies immunity for the negligent operation of municipally owned vehicles) and R. C. 723.01 (denying immunity for defects in roads or bridges, etc.).

[8] R. C. 701.02 does immunize municipalities from liability caused by police-automotive accidents occurring during an emergency run.

[9] By ruling that this case falls within the holding of *Gabris* v. *Blake, supra,* the majority extends municipal immunity for police actions

sults are the product of judicial and legislative attempts to expand an individual's recourse against his local government, then it would be much better and simpler to join the majority of American jurisdictions and abolish municipal immunity altogether.

The objections that abolishing immunity would create a flood of litigation or that it would financially cripple local governments are insufficient to require a negative answer (see David, Tort Liability of Local Government: Alternatives to Immunity from Liability or Suit [1959], 6 U.C.L.A. L. Rev. 1; Lambert, Tort Law, 36 A.T.L.A. L.J. 20, 23), especially since immunity has already been legislatively and judicially abolished for a number of municipal activities.

In addition, if the burden of damages must be imposed, it is much fairer that it be imposed on the municipality than on the victim. In the words of one commentator:

"* * * cities and states are active and virile creatures capable of inflicting great harm, and their civil liability should be co-extensive. Even though a governmental entity does not profit from its projects, the taxpaying public nevertheless does, and it is the taxpaying public which should pay for governmental maladministration. If the city operates or maintains injury-inducing activities or conditions, the harm thus caused should be viewed as a part of the normal and proper costs of public administration and not as a diversion of public funds. The city is a far better loss-distributing agency than the innocent and injured victim." 32 A.T. L. L.J. 284, 288 (1968); see, also, 2 Harper & James, The Law of Torts (1956), 1622. As Judge Gibson stated in his concurrence to *Hack* v. *Salem* (1963), 174 Ohio St. 383, at page 397, "[t]o raise the question of whether the municipality or the injured individual is better able to bear the cost is to answer it."

Where, as in the instant cause, the individual is a

---

to police shootings. The *Gabris* case dealt with immunity from claims arising out of a police automotive mishap.

paralyzed 17-year-old boy and the municipality is able to obtain liability insurance, one wonders if the question even need be asked.

Because the judicially-created doctrine of sovereign immunity for municipalities is a legal anachronism which denies recovery to injured individuals without regard to the municipality's culpability or the individual's need for compensation, I believe this court should join the ranks of the majority of American jurisdictions and abolish it. Therefore, I dissent.

CELEBREZZE and SWEENEY, JJ., concur in the foregoing dissenting opinion.