McCLOUD et al., Appellants,

v.

NIMMER et al., Appellees.

[Cite as *McCloud v. Nimmer* (1991), 72 Ohio App.3d 533.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58043.

Decided Feb. 19, 1991.

*Valore, Moss & Kalk* and *Daniel L. Kalk,* for appellants.

*Tim M. Watterson,* Assistant Director of Law, for appellees.

PARRINO, Judge.

Ray McCloud and his wife, plaintiffs, sued Eric Nimmer, a Cleveland police officer, the city of Cleveland, its mayor and police chief for negligence arising out of Nimmer's shooting of Ray McCloud. The court of common pleas below entered a default judgment against Nimmer in the amount of $200,000, and dismissed the remaining defendants pursuant to Civ.R. 56 and the immunity provisions of R.C. 2744.02. Plaintiffs appeal the entry of summary judgment. For the reasons set forth below, we affirm.

In July 1988, when he was off duty, Nimmer went to visit his friend Ray McCloud at McCloud's home, a Cuyahoga Metropolitan Housing Authority unit. Apparently Nimmer and McCloud engaged in practicing disarming techniques with Nimmer's city-issued gun. During Nimmer's visit the gun discharged, injuring McCloud. Nimmer then repeatedly interfered with Mrs. McCloud's attempts to summon emergency medical assistance.

Nimmer was brought up on disciplinary charges by the Cleveland Police Department for violation of police department rules in the shooting of McCloud. Nimmer pleaded no contest, and was suspended for fifteen days without pay. Nimmer did not respond to the complaint filed in the trial court, and default judgment in the amount of $200,000 was subsequently entered against him.

Plaintiffs asserted in the complaint that the remaining defendants, collectively referred to as "the city," were negligent because they inadequately trained Nimmer. The city filed a motion to dismiss pursuant to Civ.R. 12(B)(6) or, in the alternative, for summary judgment pursuant to Civ.R. 56. The city argued that it was not liable for Nimmer's conduct pursuant to the immunity statute, specifically R.C. 2744.02(A)(1).

After first overruling the city's motion, the court subsequently granted summary judgment. In its written opinion, the court stated that the city was immune pursuant to R.C. 2744.02(A)(1), and that the exemptions to immunity

in R.C. 2744.02(B)(2) and (4) were not applicable. The McClouds timely appealed the court's entry of summary judgment for the city.

I

Appellants' first assignment of error reads as follows:

"The trial court erred in granting summary judgment in favor of the appellees due to the fact that the running and sponsoring of a police academy is a proprietary function, and Sec. 2744.02(B)(2) of the Ohio Revised Code allows for the imposition of liability upon a political subdivision for injury caused in the negligent performance of a proprietary function."

Appellants argue that the city should be held liable for Nimmer's shooting of McCloud because it negligently performed the proprietary function of training Nimmer.

R.C. 2744.02(A)(1) provides immunity to political subdivisions as follows:

"For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

The pertinent exception to immunity set forth in R.C. 2744.02(B)(2) reads in pertinent part as follows:

"(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

" * * *

"(2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

"Governmental" and "proprietary functions" are defined in R.C. 2744.01(C) and (G) in pertinent part as follows:

"(C)(1) 'Governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

"(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

"(b) A function that is for the common good of all citizens of the state;

"(c) A function that promotes or preserves the public peace, health, safety, or welfare, that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons, and that is not specified in division (G)(2) of this section as a proprietary function.

"(2) A 'governmental function' includes, but is not limited to, the following:

"(a) *The provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection* [emphasis added];

" * * *

"(G)(1) 'Proprietary function' means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies all of the following:

"(a) *The function is not one described* in division (C)(1)(a) or (b) of this section and is not one specified *in division (C)(2) of this section* [emphasis added];

"(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons;

"(2) A 'proprietary function' includes, but is not limited to, the following:

"(a) The operation of a hospital by one or more political subdivisions;

"(b) The design, construction, reconstruction, renovation, repair, maintenance, and operation of a public cemetery other than a township cemetery, or of a park, playground, playfield, zoo, zoological park, bath, indoor recreational facility, or swimming pool or pond;

"(c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system;

"(d) The maintenance, destruction, operation, and upkeep of a sewer system;

"(e) The operation and control of a public stadium, golf course, auditorium, civic or social center, exhibition hall, arts and crafts center, band or orchestra, or off-street parking facility."

R.C. 2744.01(C)(2)(a) provides that governmental functions include the provision or nonprovision of police services or protection.

■ R.C. 2744.01(G)(1)(a) provides that proprietary functions do not include those functions specified as governmental in R.C. 2744.01(C)(2). Furthermore, police services have always been considered a governmental, not a proprietary, function. *Haas v. Akron* (1977), 51 Ohio St.2d 135, 5 O.O.3d 110, 364 N.E.2d 1376, overruled on other grounds, *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. See, also, 18 McQuillin, Municipal Corporations (3 Ed.1984) 336, Section 53.51: "For those jurisdictions subscribing to the dichotomy between governmental and proprietary functions, it is firmly established that the operation of a police department is a governmental function * * *."

■ Appellants cite no authority in support of their argument that the training of police officers is not a governmental, but rather a proprietary, function. Their argument is based solely on their assertion that private colleges and organizations provide police officer training courses.

■ R.C. 2744.01(C) does not exclude from the definition of governmental functions those functions sometimes performed by private entities for political subdivisions. In fact, many of the specifically enumerated governmental functions set forth in R.C. 2744.01(C)(1) are commonly performed by private entities for political subdivisions, including, but not limited to, ambulance services, clean up of hazardous wastes, maintenance and repair of highways and governmental buildings, disposal of solid wastes, and the planning, design and construction of public improvements. Since police services are specifically defined as a governmental function, what entity actually performs them or a part of them on behalf of a political subdivision has no bearing on their status as governmental pursuant to R.C. 2744.01(C)(1). Appellant's first assignment of error is overruled.

## II

Appellants' second assignment of error reads as follows:

"The trial court erred in granting summary judgment in favor of the appellees due to the fact that an apartment unit at the Cuyahoga County Metropolitan Housing Authority is a building used in connection with the performance of a governmental function, and Sec. 2744.02(B)(4) of the Ohio Revised Code allows for the imposition of liability upon a political subdivision for injury caused in said building by an employee of the political subdivision."

Appellants argue that the city should be liable because McCloud was shot at his residence, which is a unit of the Cuyahoga Metropolitan Housing Authority. Without citation to any authority, appellants claim that McCloud's residence is a building used in connection with the performance of the governmen-

tal function of providing housing to the indigent, and therefore R.C. 2744.-02(B)(4) imposes liability.

R.C. 2744.02(B)(4) provides:

"Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code."

R.C. 2744.02(B)(4) includes a general description, "buildings that are used in connection with the performance of a governmental function," as well as two specific examples, office buildings and courthouses.

■■■ The rule of *ejusdem generis* provides that where a statute includes both a specific enumeration of things to be included, as well as a more general classification, the general classification is not to be construed broadly, but rather is restricted in scope to include only things similar in kind to the things specifically named. *State v. Barker* (1983), 8 Ohio St.3d 39, 41, 8 OBR 401, 402–403, 457 N.E.2d 312, 314–315. Therefore, we must interpret "buildings that are used in connection with the performance of a governmental function" as limited to the class similar to office buildings and courthouses. Office buildings and courthouses are buildings in which the business of government is conducted and which are open to the public. They are not similar in kind to a private residence subsidized by the government. Therefore, the trial court did not err in concluding that R.C. 2744.02(B)(4) is inapplicable to the instant case. Appellants' second assignment of error is without merit.

*Judgment affirmed.*

KRUPANSKY, C.J., and DAVID T. MATIA, J., concur.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.