OPINION
{¶ 1} Plaintiffs-appellants William E. "Buster" Fisher, et al. appeal the October 13, 2004 Entry of the Morrow County Court of Common Pleas, which granted summary judgment in favor of defendants-appellees Sheriff Tom E. Harden, et al.
 STATEMENT OF THE FACTS AND CASE[1] {¶ 2} On the afternoon of July 10, 2000, in a rural farming area of Morrow County, Ohio, appellant, a seventy-seven year old retired farmer, went groundhog hunting. Appellant routinely engaged in this activity in an effort to help protect his neighbors' crops. Appellant, dressed in bib overalls, positioned himself in a folding chair upon an elevated railroad grade on a neighbor's property. Appellant had his rifle and a tripod, which he used to steady his rifle and help him aim.
 {¶ 3} Appellant sat a distance of approximately 250 yards from County Road 59, a rural road which runs through Morrow County. A passerby noticed appellant, in the distance, sitting on the railroad tracks. Finding the presence of an individual on the tracks unusual, and assuming the person was possibly suicidal, the passerby telephoned the Morrow County Sheriff's Department and reported, which was subsequently found to be inaccurate, a man with his feet tied to the railroad tracks. The Sheriff's Department dispatched a code 58, which indicates a possible suicide.
 {¶ 4} Appellees Deputies Stephen Alexander and Molly Alexander, his wife, responded to the dispatch. Deputy Stephen Alexander transferred from his position as a corrections officer to a patrolman in February, 2000. Molly Alexander was an auxiliary, unpaid deputy. The deputies proceeded to the call with the lights and sirens of their cruiser activated. A rescue squad was also dispatched to the scene. Upon arrival at the scene, the deputies located appellant, who was seated in a folding chair approximately 250 yards away. Deputy Stephen Alexander, using the cruiser's microphone and speaker system, instructed appellant to come toward the officers. Appellant stood, gathered his belongings, and walked along the railroad tracks toward the officers. As appellant proceeded toward them, the deputies noticed he was carrying a rifle, which he had slung over his shoulder. The deputies drew their firearms, crouched behind the open doors of the cruiser, and ordered appellant to put down the rifle before advancing closer. The deputies acknowledged appellant initially appeared unable to hear their command, and they responded with additional instructions for him to put down the rifle. Upon hearing the command, appellant complied with the deputies' request. Appellant was at a distance of nearly 200 yards away. The officers then instructed appellant to put down his folding chair and tripod. Appellant complied once he heard the deputies. Again, the officers stated they had to repeat their instructions until it appeared appellant heard them.
 {¶ 5} Appellant, with nothing in his hands, walked towards the road. As appellant deliberately walked towards the deputies, Deputy Stephen Alexander realized appellant was an older gentleman. The deputies conceded appellant approached them in a normal fashion, not acting out, or saying or doing anything out of the ordinary. The deputies kept their weapons drawn and trained upon appellant. When appellant arrived at the road, Deputy Stephen Alexander directed him to walk backwards toward Deputy Molly Alexander. When appellant reached the deputies, they commanded him, at gunpoint, to lay face down on the road while they handcuffed him behind his back. Deputy Stephen Alexander testified he handcuffed appellant for his (the deputy's) safety, and acknowledged appellant was not under arrest.
 {¶ 6} Appellant immediately went into cardiac arrest. After unsuccessfully attempting to stand appellant on his feet, the deputies left appellant, handcuffed, on the ground. Deputy Stephen Alexander proceeded to gather the objects appellant had placed on the ground. Shortly thereafter, a woman who lived nearby and Deputy Mark Leary, separately arrived at the scene. The woman, Ruth Cresswell, had previously and unsuccessfully attempted to advise Deputies Stephen and Molly Alexander appellant was merely groundhog hunting. Mrs. Cresswell informed Deputy Leary appellant suffered from a heart condition. Deputy Leary, observing appellant's distressed state, uncuffed appellant, turned him on his back, and called for medical assistance. Appellant was life flighted to Riverside Hospital in Columbus, Ohio, for emergency care. Appellant survived, but is permanently disabled as a result of the incident.
 {¶ 7} On December 4, 2000, appellant brought a 1983 action against appellees in the United States District Court for the Southern District of Ohio, alleging appellees violated his right against an unreasonable seizure as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution. On July 17, 2003, appellant filed a Complaint in the Morrow County Court of Common Pleas, raising state causes of action against appellees. Appellees filed a timely answer, raising eight affirmative defenses including qualified immunity under R.C. Chapter 2744. The parties stipulated to the authenticity of the depositions, affidavits and exhibits submitted in the federal court case, and submitted that evidence in support of their respective motions for summary judgment.
 {¶ 8} Appellant filed a motion for partial summary judgment on the false arrest claim on July 24, 2004. Appellant subsequently filed a second motion for partial summary judgment against Sheriff Tom Harden on the supervisory liability claim. Appellees filed a motion for summary judgment on August 4, 2004. Via Entry filed October 13, 2004, the trial court granted summary judgment in favor of appellees, and overruled appellant's motions for partial summary judgment. The trial court specifically found appellants' claims were not barred by the doctrine of issue preclusion, res judicata, and/or collateral estoppels as the federal district court had declined to rule on the state claims. However, the trial court concluded appellees were immune from liability under R.C. Chapter 2744.
 {¶ 9} It is from this judgment entry appellants appeal, raising the following assignments of error:
 {¶ 10} "I. THE LOWER COURT ERRED, TO THE PREJUDICE OF THE PLAINTIFFS, BY AWARDING SUMMARY JUDGMENT TO DEFENDANTS MOLLY ALEXANDER AND STEPHEN ALEXANDER BASED UPON GOVERNMENTAL IMMUNITY. GENUINE ISSUES OF MATERIAL FACT, AND GENUINELY DISPUTED INFERENCES FROM THOSE FACTS, EXIST IN THE RECORD, PRECLUDING SUMMARY JUDGMENT.
 {¶ 11} "II. THE LOWER COURT ERRED, TO THE PREJUDICE OF THE PLAINTIFFS, BY AWARDING SUMMARY JUDGMENT TO DEFENDANT SHERIFF TOM E. HARDEN BASED UPON GOVERNMENTAL IMMUNITY. GENUINE ISSUES OF MATERIAL FACT, AND GENUINELY DISPUTED INFERENCES FROM THOSE FACTS, EXIST IN THE RECORD, PRECLUDING SUMMARY JUDGMENT.
 {¶ 12} "III. THE LOWER COURT ERRED, TO THE PREJUDICE OF THE PLAINTIFFS, BY DENYING SUMMARY JUDGMENT TO THE PLAINTIFFS. DEFENDANTS STEPHEN ALEXANDER AND MOLLY ALEXANDER CONDUCTED A MENTAL HEALTH SEIZURE, BUT DID SO IN DIRECT VIOLATION OF THE MANDATORY REQUIREMENTS OF THE RELEVANT STATUTE, O.R.C. CHAPTER 5122. SUCH A SEIZURE IN VIOLATION OF LAW CONSTITUTES THE TORT OF FALSE IMPRISONMENT, AND `IMMUNITY' DOES NOT ATTACH, AS A MATTER OF LAW. DEFENDANT HARDEN PERMITTED UNTRAINED AND UNSUPERVISED ROOKIE DEPUTIES TO USE FIREARMS AND FELONY TAKE-DOWN PROCEDURES ON CITIZENS; AND SPECIFICALLY RATIFIED THE UNLAWFUL SEIZURE OF MR. FISHER. THIS CONDUCT BY DEFENDANT HARDEN WAS, AT A MINIMUM, RECKLESS AS A MATTER OF LAW."
 Standard of Review {¶ 13} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36.
 {¶ 14} Civ. R. 56(C) states, in pertinent part:
 {¶ 15} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 16} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
 {¶ 17} It is based upon this standard we review appellants' assignments of error.
 I, III {¶ 18} Because appellants' first and third assignments of error are interrelated, we shall address said assignments together. The central issue raised in appellant's first and third assignments of error is whether appellees Stephen Alexander and Molly Alexander are immune from liability.
 {¶ 19} "R.C. 2744.02(A)(1) states, in part: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
 {¶ 20} The immunity afforded a political subdivision in R.C. 2744.02(A)(1) is not absolute, but is, by its express terms, subject to the five exceptions to immunity listed in R.C. 2744.02(B). Hill v.Urbana (1997), 79 Ohio St.3d 130. Once immunity is established under R.C. 2744.02(A)(1), the second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply.[2] Finally, under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies. Cater v. Cleveland, 83 Ohio St.3d 24, 28,1998-Ohio-421.
 {¶ 21} R.C. 2744.03(A) provides, in pertinent part:
 {¶ 22} "(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 {¶ 23} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ 24} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ 25} "(c) Liability is expressly imposed upon the employee by a section of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee." (Emphasis added).
 {¶ 26} The term "willful and wanton misconduct" connotes behavior demonstrating a deliberate or reckless disregard for the safety of others. Fabrey v. McDonald Police Dept. (1994), 70 Ohio St.3d 351, 356. The issue of wanton misconduct is normally a jury question. Id. The standard for showing wanton misconduct is, however, high. Wanton misconduct is the failure to exercise any care whatsoever. Hawkins v.Ivy (1977), 50 Ohio St.2d 114. "[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." Roszman v. Sammett (1971),26 Ohio St.2d 94, 96-97. Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury. Id. at 97. In Thompson v. McNeill (1990),53 Ohio St.3d 102, the Ohio Supreme Court employed the recklessness standard as enunciated in 2 Restatement of the Law 2d, Torts (1965), Section 500: "The actor's conduct is in reckless disregard of the safety of others if * * * such risk is substantially greater than that which is necessary to make his conduct negligent."
 {¶ 27} Before we can determine whether appellees acted with malicious purpose, in bad faith, or in a wanton or reckless manner, we must determine whether, after viewing the evidence in a light most favorable to appellants, no reasonable police officer would conclude the stop and detention of appellant was valid under the principles announced in Terryv. Ohio (1968), 392 U.S. 1, and its progeny. This issue has not been addressed by any Ohio state courts. However, the United States Court of Appeals for the Sixth Circuit has held a law enforcement official may not physically restrain an individual merely to assess his mental health, absent suspected criminal activity. Rather, the officer must have probable cause to believe the person seized poses a danger to himself or others. Monday v. Oullettte (6th Cir. 1997), 118 F2d 1099, 1102. This is a much higher standard than the reasonable, articulable suspicion an officer must have with respect to suspected criminal activity.
 {¶ 28} The standard for qualified immunity is one of objective reasonableness. As such, claims of qualified immunity are to be analyzed on a fact specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, in light of clearly established law and the information that he possessed. Pray v. Sandusky (C.A.6, 1995), 49 F.3d 1154, 1158; see, generally, Hicks v. Leffler (1997), 119 Ohio App.3d 424, 427-428. The contours of the right alleged to have been violated must be sufficiently clear such that a reasonable official would understand that, what he is doing, violates that right. Anderson v. Creighton (1987), 483 U.S. 635,640. "[If] officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley v. Briggs (1986),475 U.S. 335, 341; see, also, Bruce v. Village of Ontario (Nov. 24, 1998), Richland App. No. 98-CA-9-2, unreported ("[A] violation of clearly established law must be so clear as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional").
 {¶ 29} Thus, even if the official's conduct is ultimately proved legally wrong, he still will be entitled to immunity as long as his decision was objectively reasonable. Pray, supra, at 1158; see, e.g.,O'Brien v. City of Grand Rapids (C.A.6, 1994), 23 F.3d 990, 1000
(Although legally mistaken as to the existence of exigent circumstances to enter house without warrant, police officers were entitled to qualified immunity because it could not be said "no reasonable officer, objectively assessing the situation, could conclude that there were exigent circumstances excusing the requirement that a warrant be obtained").
 {¶ 30} Herein, the trial court found the deputies' actions did not rise to the level of willful, wanton or reckless. We believe reasonable minds could disagree as to this conclusion. The deputies conceded they were not responding to a report of criminal conduct and they never suspected appellant was engaged in or about to be engaged in a crime. Rather, the sole basis of their investigation was a possible suicide attempt. The deputies failed to demonstrate they had probable cause to believe appellant was a danger to himself or others. The officers were responding to a dispatch which indicated a man was tied to the railroad tracks and might be attempting to commit suicide. When the deputies arrived, they ordered appellant to come to the road. Once appellant stood and began to walk along the railroad tracks toward the road, any question as whether appellant was tied to the railroad tracks was answered in the negative. When the deputies noticed appellant had a rifle, they ordered him to put it down, and after several commands, he complied. Although the deputies had to give appellant repeated instructions to put the rifle down, Deputy Stephen Alexander testified appellant did not seem as though he could hear the instructions. Accordingly, there is no indication appellant was being willfully noncompliant with the deputies' commands.
 {¶ 31} After appellant placed the rifle on the ground, he walked toward the officers. The deputies instructed him to put down his lawn chair and tripod. Again, once appellant heard the command, he complied. Appellant never made any quick or furtive movements. Neither deputy observed appellant do anything which he or she considered threatening or caused him or her to be fearful. Nonetheless, the deputies kept their weapons drawn and trained upon appellant. By the time appellant had put down his rifle and other items, the deputies recognized he was an older gentleman. When appellant finally reached the deputies, they commanded him, at gun point, to lay face down on the road. Appellant complied. The deputies handcuffed him behind his back. Appellant immediately went into cardiac arrest. The deputies left appellant handcuffed and lying on the ground, without assessing the seriousness of appellant's condition. Another deputy, who arrived at the scene, observed appellant's distressed state and called for medical assistance. The deputies never made any inquiry of appellant to determine if he might be depressed and attempting to commit suicide. In light of the circumstances, reasonable minds could conclude no facts exist which would cause a reasonable officer to believe appellant posed a danger to himself or others at the time he was seized. We find appellant's seizure was not valid under Terry.
 {¶ 32} We find reasonable minds could differ as to whether the inactions and actions of the deputies rose to the level of wanton and willful misconduct. Accordingly, we find the trial court erred in granting summary judgment in favor of appellees Stephen Alexander and Molly Alexander on the basis of immunity.
 {¶ 33} Appellants' first and third assignments of error are sustained.
 II. {¶ 34} In their second assignment of error, appellants challenge the trial court's granting summary judgment in favor of appellee Sheriff Tom Harden. Appellants contend appellee Tom Harden, in his official capacity as Sheriff of Morrow County, Ohio, failed to adequately train and supervise his deputies.
 {¶ 35} Ohio courts have routinely found police services to be a governmental, not a proprietary, function. McCloud v. Nimmer (1991),72 Ohio App.3d 533, 538; Haas v. Akron (1977), 51 Ohio St.2d 135, overruled on other grounds, Haverlack v. Portage Homes, Inc. (1982),2 Ohio St.3d 26. See, also, 18 McQuillin, Municipal Corporations (3 Ed. 1984) 336, Section 53.51: "For those jurisdictions subscribing to the dichotomy between governmental and proprietary functions, it is firmly established that the operation of a police department is a governmental function * * *."
 {¶ 36} In the instant action, the evidence indicates the deputies received police training and graduated from the Ohio Peace Officers Training Academy. Deputy Stephen Alexander also trained for two months under the supervision of two sergeants. Deputy Molly Alexander, as an auxiliary deputy, could only accompany regular deputies. We find these facts sufficient to establish appellee Sheriff Harden was not willful, wanton or reckless in his training and supervision of the deputies, despite the fact Deputy Stephen Alexander had little road patrol experience; Auxillary Deputy Molly Alexander had not gone through a probationary period; and neither had been given any specific training in mental health detentions.[3]
 {¶ 37} Appellants' second assignment of error is not well taken and is overruled.
 {¶ 38} The judgment of the Morrow County Court of Common Pleas is affirmed in part, and reversed in part and the matter remanded to the trial court for further proceedings consistent with the law and our opinion.
Hoffman, P.J., Wise, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Morrow County Court of Common Pleas is affirmed in part, and reversed in part and the matter remanded to the trial court for further proceedings consistent with the law and our opinion. Costs assessed to appellees.
[1] This Statement of the Facts and Case is largely taken from the United States Court of Appeals for the Sixth Circuit's Opinion in Fisherv. Harden, 398 F.3d 837, 2005 Fed. App. 0096P.
[2] Appellees do not argue the inapplicability of any of the five exceptions in R.C. 2744.02(B).
[3] We note the Sixth Circuit reached the same conclusion with respect to appellants' claims for failure to adequately train and supervise in Fisher v. Harden, supra.