**SCHWEIZER, Appellant,**

v.

**RIVERSIDE METHODIST HOSPITALS et al., Appellees.**

[Cite as *Schweizer v. Riverside Methodist Hospitals* (1996), 108 Ohio App.3d 539.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE03–277.

Decided Jan. 16, 1996.

*Landskroner & Phillips Co., L.P.A., Christian R. Patno* and *Gregory J. O'Brien,* for appellant.

*Squire, Sanders & Dempsey, David J. Young* and *Pamela Thurston,* for appellee Riverside Methodist Hospitals.

*Brett Jaffe,* for appellees Grant E. Schmidt, M.D., Steven R. Williams, M.D., Riverside Infertility Center, and Moon H. Kim, M.D.

---

McCORMAC, Judge.

Plaintiff-appellant, Frederick Schweizer, M.D., filed a verified amended complaint against Riverside Methodist Hospitals, Grant E. Schmidt, M.D., Steven R. Williams, M.D., Riverside Infertility Center, and Moon H. Kim, M.D., alleging that these defendants had violated Ohio's antitrust statutes, known as the Valentine Act, by preventing plaintiff from practicing in vitro fertilization ("IVF") and gamete intrafallopian tube transfer ("GIFT") at Riverside Methodist Hospitals. Plaintiff also asserted claims under the Corrupt Activities Act and for private inurement, which were dismissed as to all defendants and which dismissals are not raised as error in this appeal.

Ultimately, the trial court sustained all of defendants' motions for judgment on the pleadings on plaintiff's claim of violation of the Valentine Act (R.C. Chapter 1331).

The court also denied plaintiff leave to file a second amended complaint.

Plaintiff appeals asserting the following assignments of error:

"I. The Trial Court Erred by Dismissing Appellant's First Claim for Relief[.]

"II. The Trial Court Erred by Denying Appellant's Motion for Leave to File Amended Second Complaint[.]"

The first issue is whether the trial court erred by dismissing plaintiff's Valentine Act claim against defendant Riverside Methodist Hospitals and the other defendants.

▇▇▇▇ Judgment on the pleadings may be granted where no material factual issue exists and the moving party is entitled to judgment as a matter of law. Determination of the motion is restricted to the allegations of the pleadings with all reasonable inferences construed in the nonmovant's favor. *Bennett v. Ohio Dept. of Rehab. & Corr.* (1991), 60 Ohio St.3d 107, 108, 573 N.E.2d 633, 635.

The trial court ruled that allegations of plaintiff's amended complaint were insufficient as a matter of law to state a claim for violation of the Valentine Act. To decide whether the allegations of the amended complaint are sufficient, it is

necessary to determine what must be alleged in order to state a claim for violation of the Valentine Act and to determine whether plaintiff's allegations were sufficient to raise a factual issue as to the necessary elements.

Ohio's antitrust statutes, referred to as the Valentine Act, are contained in R.C. Chapter 1331, entitled "Monopolies." The Valentine Act was modeled after the Sherman Antitrust Act ("Sherman Act"), and the Supreme Court of Ohio has interpreted the statutory language in light of federal judicial constructions of the Sherman Act. See *C.K. & J.K., Inc. v. Fairview Shopping Ctr.* (1980), 63 Ohio St.2d 201, 204, 17 O.O.3d 124, 126, 407 N.E.2d 507, 508–509. The court adopted the interpretation of the Sherman Act by the United States Supreme Court in *Std. Oil Co. v. United States* (1911), 221 U.S. 1, 62, 31 S.Ct. 502, 516, 55 L.Ed. 619, 645–646, wherein the court stated that:

" * * * [T]he criteria to be resorted to in any given case for the purpose of ascertaining whether violations * * * have been committed is the rule of reason guided by the established law and by the plain duty to enforce the prohibitions of the act, and thus the public policy which its restrictions were obviously enacted to subserve. And it is worthy of observation * * * that although the statute * * * makes it certain that its purpose was to prevent undue restraints of every kind or nature, nevertheless by the omission of any direct prohibition against monopoly in the concrete, it indicates a consciousness that the freedom of the individual right to contract, when not unduly or improperly exercised, was the most efficient means for the prevention of monopoly * * *."

The rule of reason was adopted in paragraph four of the syllabus in *List v. Burley Tobacco Growers' Coop. Assn.* (1926), 114 Ohio St. 361, 151 N.E. 471.

In *List*, while noting that the Valentine Act was written in "broader and stronger" terms than the Sherman Act, the court pointed out that federal policy and federal cases interpreting the Sherman Act must be examined to ascertain the meaning of the Valentine Act since it was patterned after the Sherman Act.

In *List*, plaintiff was a cooperative association of tobacco growers. Members of the association were bound by a merchandising contract to sell their entire crop of tobacco to the association. The association would then merchandise and sell the tobacco. The defendant, in breach of his agreement with the association, sold his crop of tobacco to someone other than the association. The association filed suit and defendant asserted that the merchandising contract was void because it violated the Valentine Act. The Supreme Court noted that the plain language of the Valentine Act would prohibit any agreement or combination which would "create or carry out restrictions in trade or commerce." R.C. 1331.01(B)(1). The court, however, recognized that:

"If the Valentine Act should be construed literally and strictly, no partnership could be formed, no corporation could be organized, no vendor could agree to a reasonable limitation upon his future business, no broker could represent more than a single merchant or manufacturer in the same industry, and a score of other things which have been permitted and approved for the past two or three centuries would now be under the ban. * * *" *List,* 114 Ohio St. at 377, 151 N.E. at 476.

Rejecting a strict and literal interpretation of the plain language of the Valentine Act, the court in *List,* at paragraph four of its syllabus, stated:

"Contracts in restraint of trade are not illegal except when unreasonable in character. * * *"

In *List,* the court concluded that the contract between tobacco growers and the cooperative was not an unreasonable restraint of trade even though it clearly was in partial restraint of trade. The court stated that the established interpretation of modern antitrust legislation is to provide the machinery to prevent abuses of combination and to punish those transactions which by the settled principles of common law are declared to be unlawful. The court identified forbidden transactions under the Valentine Act as ones "which restrict production for the sole purpose of enhancing price, stifling competition, or creating a 'corner,' fixing prices at a definite standard, or combining in a manner that has the necessary tendency to oppress competitors or the public." *List,* 114 Ohio St. at 378, 151 N.E. at 476. One of the key factors in the *List* decision was that the tobacco growing cooperative was not able to control prices because the cooperative lacked market power to do so.

In summary, in construing the literal language of the Valentine Act, it is necessary to keep in mind that it and the Sherman Act on which it was patterned were formulated to prevent monopolies, which, in general, means the concentration of business in the hands of a few or a combination for the purpose of raising or controlling prices. See *List,* 114 Ohio St. at 382, 151 N.E. at 477.

In plaintiff's amended complaint, plaintiff alleges that Riverside Methodist Hospitals, Riverside Infertility Center, Inc., and the individual defendant-physicians conspired to monopolize and control the practice of IVF and GIFT and other techniques of assisted reproductive technology in the central Ohio area, along with the Ohio State University Hospitals, which was not made a party (as that entity is not subject to the jurisdiction of the common pleas court). Plaintiff further alleges that, in furtherance of the conspiracy, defendants devised a method of describing the procedure in their operative notes to defraud insurance companies who were paying for these procedures, which are not normally covered under the contracts of insurance. Plaintiff alleges that this manner of billing

gave defendants an unfair advantage in having their fees and expenses paid by an insurance company rather than by the individual receiving the services.

Plaintiff further alleges that defendants entered into a course of conduct to directly or indirectly prohibit, delay, or deny plaintiff and other nonstaff physicians at Riverside with the purpose of limiting the number of physicians involved in billing for IVF and/or GIFT so that the fraudulent billing scheme could be protected. Thus, the principal allegation of the conspiracy is that defendants have denied plaintiff and others staff privileges to carry out assisted reproduction technology in order to protect their fraudulent billing scheme.

It is noted that nowhere does the complaint state, or even conclude, that defendants control the market for the performance of these technologies.

Plaintiff states that he has been injured in his business and property by being prevented from practicing assisted reproduction technology, and that he is unable to fully utilize his skills and expertise in his medical practice. In other words, the unfair competitive advantage is his denial of staff privileges to practice those technologies at Riverside Methodist Hospitals.

The question then becomes: Is this an antitrust injury recognizable by the Valentine Act? It is not. There is no allegation of an antitrust injury recognizable under R.C. 1331.08, which authorizes a suit for double damages by "the person injured in his business or property by another person by reason of anything forbidden or declared to be unlawful" by the Valentine Act. While plaintiff may personally have been injured, his claim does not fall under the Valentine Act because the loss must stem from a competition-reducing aspect or effect of defendants' behavior. Otherwise, it is not an antitrust injury. See *Atlantic Richfield Co. v. USA Petroleum Co.* (1990), 495 U.S. 328, 344, 110 S.Ct. 1884, 1894–1895, 109 L.Ed.2d 333, 350. Applying the rule of reason adopted by the Supreme Court in *List*, the injuries, if any, are not antitrust injuries.

■ As previously stated, nothing in plaintiff's amended complaint suggests that competition was reduced. The only injury alleged was plaintiff's personal inability to practice IVF and GIFT at Riverside. Plaintiff's antitrust claim thus rests on the fact that he is a disappointed competitor who will be forced to practice his services elsewhere. It is understandable that plaintiff seeks to avoid cases interpreting the Sherman Act as to whether a disappointed competitor states an antitrust violation in this situation because the federal cases have uniformly rejected that proposition. The mere fact, standing alone, that a disappointed competitor must practice elsewhere does not constitute an antitrust injury. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde* (1984), 466 U.S. 2, 31–32, 104 S.Ct. 1551, 1568, 80 L.Ed.2d 2, 24–25. Without a showing of actual adverse effect

on competition, plaintiff cannot make a case under the antitrust laws. See *id.* None has ever been alleged in this case.

The need to show injury to competition and the failure to do so has resulted in the denial of antitrust relief to physicians denied medical staff privileges. As pointed out in *Oksanen v. Page Mem. Hosp.* (C.A.4, 1991), 945 F.2d 696, 708, if antitrust injury principles were not applied, including the proof of impact on the competition as a whole within the relevant market and proof that defendants used their market power to restrain trade, a physician's workplace grievance within the hospital would be elevated to the status of an antitrust action.

■ Similarly, the claim of insurance fraud does not fall within damages causally related to the purposes of the Valentine Act and, therefore, does not constitute a claim of an antitrust violation.

Plaintiff's first assignment of error is overruled.

Plaintiff secondly contends that the trial court erred in denying his motion for relief to file a second amended complaint.

■ Civ.R. 15(A) provides that leave to file an amended pleading "shall be freely given when justice so requires." The decision of whether to allow a party leave to amend a complaint is within the discretion of the trial court and the ruling should not be disturbed on appeal absent an affirmative showing of an abuse of discretion. *Edmondson v. Steelman* (1992), 87 Ohio App.3d 455, 457, 622 N.E.2d 661, 662; *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 269–270, 297 N.E.2d 113, 122.

■ An abuse of discretion connotes more than an error of judgment on the part of the court. It implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1251–1252.

■ Plaintiff initially filed his complaint in this action on April 17, 1992. Later plaintiff sought and was granted leave to file an amended complaint to address deficiencies identified by defendants in their motions for judgment on the pleadings. Over two years later, on June 2, 1994, the trial court dismissed all of the claims asserted in the amended complaint. On June 14, 1994, plaintiff filed a motion for leave to file a second amended complaint. In the second amended complaint, plaintiff sought to add a new cause of action against all the defendants for business interference and to add conclusionary allegations to attempt to buoy up the antitrust claim. There were no new factual allegations set forth in the proposed second amended complaint.

The trial court was acting within its discretion when it denied plaintiff permission to file a second amended complaint. The newly asserted theory of business interference was available at the onset of the litigation or, at the very least, at the time that plaintiff filed his first amended complaint. Time alone is generally an insufficient reason for the court to deny leave to amend; the primary consideration is whether there is actual prejudice to the defendants because of the delay. As regards the business interference claim, defendants are actually prejudiced by the necessity of additional motions or answers. Their responses to that claim could have been incorporated with defenses against the other claims had the claim been asserted earlier. Furthermore, it is doubtful that there is a claim stated for business interference.

As to the antitrust violation, an important factor is whether the second amended complaint would make it likely that plaintiff could prevail. In other words, does the second amended complaint effectively correct the deficiencies that resulted in dismissal of the claims in the first amended complaint? It is not likely that the additions in plaintiff's second amended complaint will correct the deficiencies. The allegations are only conclusionary and it is doubtful that they will withstand a factual analysis, even if they may be sufficient to withstand a motion to dismiss and, thus, cause defendants to incur the expense of resorting to summary judgment procedures.

Plaintiff argues that he should be given another opportunity to amend his complaint because the trial court incorrectly asserted that extensive discovery had taken place. While it is true that there had not been extensive discovery in this particular action, there had been sufficient discovery to obtain information necessary to plead a valid antitrust claim, if one exists, or a claim for interference with business relations. Furthermore, substantial discovery had taken place in a similar action filed in federal court. The dismissals have not been shown to be related to plaintiff's ability to discover facts.

Plaintiff's second assignment of error is overruled.

Plaintiff's assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and CLOSE, JJ., concur.

JOHN W. McCORMAC, J., retired, of the Tenth Appellate District, sitting by assignment.