**COLUMBIA GAS OF OHIO, INC., Plaintiff,**

v.

**COLUMBUS ASPHALT PAVING, INC., Defendant and Third–Party Plaintiff;**

**Westerville et al., Third–Party Defendants.**

Franklin County Municipal Court.

Nos. 2004 CVF 031877, 2004 CVF 052078 and 2005 CVE 019575.

Decided Aug. 14, 2006.

**102**

Daniel J. Igoe, Stephen L. Hebenstreit, and Andrew J. Sonderman, for plaintiff.

Donald B. Leach Jr. and Priya J. Bathija, for defendant.

Kyle J. Stroh and Michael K. Fultz, for third-party defendant city of Westerville.

DORRIAN, Judge.

{¶ 1} For the reasons outlined below, the court denies the city of Westerville's motion for judgment on the pleadings.

## I. Summary of Complaint, Counterclaim, and Third–Party Complaints

{¶ 2} Columbia Gas of Ohio's original complaint and amended complaint against Columbus Asphalt Paving ("CAP") are summarized in this court's entry and decision filed October 31, 2005. CAP's original counterclaim and amended counterclaim against Columbia Gas are summarized in this court's entry and decision filed October 31, 2005. In the same entry and decision, this court dismissed CAP's counterclaim against Columbia Gas. CAP's third-party complaint against third-party defendant Reliant Services, L.L.C. ("Reliant"), is summarized in this court's entry and decision filed October 31, 2005. In the same entry and decision, this court dismissed CAP's third-party complaint against Reliant.

{¶ 3} On January 6, 2006, Columbia Gas, CAP, and third-party defendant, the city of Westerville ("the city" or "Westerville"), filed a joint motion to join case Nos. 04 CVF 031877, 04 CVF 052078, and 05 CVE 019575. The city is a third-party defendant in the latter two cases. On January 12, 2006, this court granted the joint motion.

{¶ 4} The third-party complaints that CAP filed against the city in case Nos. 04 CVF 052078 and 05 CVE 019575 allege:

In the event that CAP is held liable to Columbia Gas in this action, the city is liable in full to CAP for indemnification.

In the event that CAP is held liable to Columbia Gas in this action, the city is liable to CAP for contribution.

## II. Summary of Westerville Motions

{¶ 5} On March 20, 2006, the city filed a motion for judgment on the pleadings, moving the court to grant judgment in favor of the city and against CAP on CAP's counterclaim against the city, arguing that:

- The city is immune from CAP's claims for money damages by operation of R.C. 2744.02(A)(1).
- The five exceptions to R.C. 2744.02(A)(1), provided in R.C. 2744.02(B), do not apply.
- As the five exceptions do not apply, it is not necessary to determine whether any defense in R.C. 2744.03 reinstitutes immunity.

In its original answers to the third-party complaints, the city did not specifically raise immunity pursuant to R.C. 2744.02 as an affirmative defense. The city's failure to specifically raise immunity as an affirmative defense was addressed by Columbia Gas and CAP in their memoranda in opposition, filed on April 7, 2006. Columbia Gas and CAP argued that the city is not entitled to immunity because it has waived any right to immunity by failing to assert the waiver in a timely manner. On April 25, 2006, the city filed a reply to the memoranda in opposition filed by Columbia and CAP and a motion for leave to amend its answers. After careful consideration, the court granted the city leave to amend its answers.

{¶ 6} Columbia Gas and CAP further claim that even if the city is entitled to assert its immunity, it is not immune because of the exception in R.C. 2744.02(B)(5) that imposes liability when "civil liability is expressly imposed upon the political subdivision by a section of the Revised Code." More specifically, Columbia Gas and CAP argue that R.C. 153.64(D) expressly imposes civil liability on the city. CAP asserts that it is exercising its right to a remedy for failure to comply with R.C. 153.64(D) by pursuing this third-party complaint and that contract clause 11020.01 provides for that remedy.

{¶ 7} On March 20, 2006, the city also filed a motion for summary judgment moving the court to grant judgment in favor of the city and against CAP on CAP's counterclaim against the city, arguing that:

The city is not liable because CAP waived its right to obtain utility information on the city plans when it expressly agreed to perform the work without the city plans or without utility information on the city plans. CAP is permitted to waive its right to obtain utility information from the city as required by R.C. 153.64 because Ohio law permits waiver of personal rights accorded by statute.

The city is not liable because it met all of its obligations under R.C. 153.64(B). It is not the city's responsibility for "stak[ing], mark[ing] or otherwise designat[ing] the location of the underground utility facilities in the construction area in such a manner as to indicate their course together with the approximate depth at which they were installed" pursuant to R.C. 153.64(C), nor is it the city's responsibility for overseeing CAP's employees once they have "actual notice of the existence of the utilit[ies]" pursuant to R.C. 153.64(D). These responsibilities fall to Columbia Gas and CAP respectively, and therefore the city is not liable.

On April 7, 2006, Columbia Gas filed its combined memorandum in opposition to Westerville's motion for summary judgment and judgment on the pleadings, and CAP filed its combined memorandum in opposition to Westerville's motions for summary judgment and judgment on the pleadings. Columbia Gas argues that the city's obligations under R.C. 153.64 are mandatory and cannot be waived.

Columbia Gas further argues that R.C. 153.64 is related to public safety and that as a matter of public policy, duties relating to public safety can not be waived. CAP argues that regardless of whether CAP could waive the rights under R.C. 153.64(B), it did not take affirmative steps to waive its rights to obtain utility information from the city. Both Columbia Gas and CAP argue that the city did not meet its obligations under R.C. 153.64(B).

### III. Standard for Motion for Judgment on the Pleadings

{¶ 8} The court now will consider the city's motion for judgment on the pleadings, as a decision regarding that motion will determine the issues that remain pending before this court on the motion for summary judgment.

{¶ 9} "Judgment on the pleadings may be granted where no material factual issue exists and the moving party is entitled to judgment as a matter of law. Determination of the motion is restricted to the allegations of the pleadings with all reasonable inferences construed in the nonmovant's favor." *Schweizer v. Riverside Methodist Hosps.* (1996), 108 Ohio App.3d 539, 671 N.E.2d 312, citing *Bennett v. Ohio Dept. of Rehab. & Corr.* (1991), 60 Ohio St.3d 107, 573 N.E.2d 633. See also *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 63 O.O.2d 262, 297 N.E.2d 113, and *Whaley v. Franklin Cty. Bd. of Commrs.* (2001), 92 Ohio St.3d 574, 752 N.E.2d 267. Civ.R. 12(C) permits consideration of the complaint and answer. "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. Thus, Civ. R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 664 N.E.2d 931, citing *Burnside v. Leimbach* (1991), 71 Ohio App.3d 399, 594 N.E.2d 60, and *Lin v. Gatehouse Constr. Co.* (1992), 84 Ohio App.3d 96, 616 N.E.2d 519.

{¶ 10} The Tenth District Court of Appeals has said that a court is not required to rule on a summary judgment motion attached to a motion for judgment on the pleadings; rather, it can grant a judgment on the pleadings without considering the summary judgment motion. *Fontbank, Inc. v. CompuServe, Inc.* (2000), 138 Ohio App.3d 801, 742 N.E.2d 674.

{¶ 11} "In ruling upon a motion under Civ.R. 12(C), the trial court is limited to the face of the pleadings on file with the court. It cannot be supported by facts outside those pleadings." *Epperly v. Medina City Bd. of Edn.* (1989), 64 Ohio App.3d 74, 580 N.E.2d 807, citing *Conant v. Johnson* (1964), 1 Ohio App.2d 133, 30 O.O.2d 157, 204 N.E.2d 100. "Therefore, the motion for judgment on the

pleadings cannot be used to obtain an adjudication of the validity of the affirmative defense unless that validity can be determined solely from the allegations in the pleadings." Id., citing *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 63 O.O.2d 262, 297 N.E.2d 113.

{¶ 12} However, the availability of immunity is a question of law that is properly determined by the court before trial. *Duff v. Coshocton Cty. Bd. of Commrs.*, 5th Dist. No. 03–CA–019, 2004-Ohio-3713, 2004 WL 1563404.

## IV. Sovereign Immunity

### A. History and Purpose of Sovereign Immunity

{¶ 13} The city claims that it is immune from third-party plaintiff CAP's claims for money damages pursuant to R.C. 2744.02(A)(1). R.C. 2744.02(A)(1) is part of the Political Subdivision Tort Liability Act, R.C. Chapter 2744. Further, the immunity granted therein is commonly referred to as sovereign immunity.

{¶ 14} The doctrine of sovereign immunity has its origin in the English common law concept that " 'the king can do no wrong.' " *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 750 N.E.2d 554, citing *Haas v. Hayslip* (1977), 51 Ohio St.2d 135, 5 O.O.3d 110, 364 N.E.2d 1376. The theory was that the king was considered the fount of justice and equity in the English common law, and it was his personal royal prerogative not to be subjected to suit in his own courts. Id., citing Borchard, Government Liability in Tort (1924), 34 Yale L.J. 1. "Although the notion of sovereign immunity is best suited to a government of royal power, American courts nonetheless accepted the doctrine in the early days of the republic." Id. at 359, 750 N.E.2d 554, citing Prosser & Keeton, Law of Torts (5th Ed.1984) 1033. In Ohio, the doctrine was first applied to the state in 1840 in *State v. Franklin Bank of Columbus* (1840), 10 Ohio 91, and it was first applied to an Ohio political subdivision in 1854 in *Dayton v. Pease* (1854), 4 Ohio St. 80. Id. at 361, 750 N.E.2d 554, citing Celebrezze & Hull, The Rise and Fall of Sovereign Immunity in Ohio (1984), 32 Cleve.St.L.Rev. 367. In 1982, the Ohio Supreme Court in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749, held that sovereign immunity for municipalities was judicially created, and therefore it could be judicially abolished. The Supreme Court determined to abrogate the doctrine for municipalities, in the absence of a statute providing immunity. The Supreme Court held that "[a] municipal corporation, *unless immune by statute*, is liable for its negligence in the performance or nonperformance of its acts." (Emphasis added.) Id.

{¶ 15} The abolishment of sovereign immunity set in motion activity by the General Assembly, and in 1985 the General Assembly enacted R.C. Chapter 2744, the Political Subdivision Tort Liability Act. Included in that Act is the political-

subdivision immunity in R.C. 2744.02(A) and the exception in R.C. 2744.02(B)(5)—which are the subject of the motion before this court now.[1]

{¶ 16} Therefore, because sovereign immunity, as it exists now, is a creature of statute, it is to the statute that this court must look. With this in mind, an examination of other court attempts to interpret the statute is appropriate. The court will turn to this examination now.

## B. Three–Tiered Analysis to Determine Whether Sovereign Immunity Applies

{¶ 17} R.C. Chapter 2744 sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. *Duff v. Coshocton Cty. Bd. of Commrs.*, 5th Dist. No. 03–CA–019, 2004-Ohio-3713, 2004 WL 1563404, citing *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 697 N.E.2d 610; *Carpenter v. Scherer–Mountain Ins. Agency* (1999), 135 Ohio App.3d 316, 733 N.E.2d 1196. First, R.C. 2744.02(A)(1) provides a political subdivision with a general grant of immunity from liability for acts or omissions connected with its governmental or proprietary functions. Id. at ¶ 20, citing *Carpenter*, 135 Ohio App.3d 316, 733 N.E.2d 1196, citing *Hill v. Urbana* (1997), 79 Ohio St.3d 130, 679 N.E.2d 1109. The immunity afforded a political subdivision in R.C. 2744.02(A)(1) is not absolute, but is, by its express terms, subject to the five exceptions to immunity listed in R.C. 2744.02(B). Once immunity is established under R.C. 2744.02(A)(1), the second tier of analysis is to determine whether any of the five exceptions to immunity in division (B) apply. Id. at ¶ 22, citing *Cater*, 83 Ohio St.3d 24, 697 N.E.2d 610. Under the third tier of analysis, if one of the exceptions in R.C. 2744.02(B) applies, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies. Id. at ¶ 22.

{¶ 18} The court will now apply this three-tier analysis to the instant case.

## V. First–Tier Analysis: Does R.C. 2744.02(A)(1) Apply?

{¶ 19} R.C. 2744.02(A)(1) states:

Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

---

1. For interesting discussions of the history, purpose, and challenges relating to the doctrine of sovereign immunity, see the following cases: *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 750 N.E.2d 554; *Fahnbulleh v. Strahan* (1995), 73 Ohio St.3d 666, 653 N.E.2d 1186; *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 662 N.E.2d 287 (Douglas, J., dissenting); and *Krause v. Ohio* (1972), 31 Ohio St.2d 132, 60 O.O.2d 100, 285 N.E.2d 736.

There is no dispute from any party that the city is a political subdivision and that the street reconstruction work at issue in this case is a governmental function. Therefore, there is no dispute that R.C. 2744.02(A)(1) applies, except as provided in division (B).

## VI. Second–Tier Analysis: Does an Exception to R.C. 2744.02(A)(1) Exist Under R.C. 2744.02(B)?

### A. Summary of Argument that Exception does Apply and Counter–Argument

{¶ 20} CAP and Columbia Gas argue that division (B) of R.C. 2744.02 provides an exception to the sovereign immunity granted to the city in division (A) of the same section. CAP and Columbia Gas point specifically to R.C. 2744.02(B)(5), which states:

> In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property *when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code,* including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

(Emphasis added.) CAP and Columbia Gas argue that R.C. 153.64(D) expressly imposes civil liability on the city and therefore, pursuant to R.C. 2744.02(B)(5), an exception exists to sovereign immunity and the city may be held liable for damages. R.C. 153.64(D) states:

\* \* \*

> If the public authority fails to comply with the requirements of [d]ivision (B) of this section, the contractor to whom the work is awarded \* \* \* complies with the requirements of [d]ivision (C) of this section, and the contractor \* \* \* encounters underground utility facilities in the construction area that would have been shown on the plans and specifications for such improvement had the registered underground utility protection service or owner of the underground utility facility who is not a member of a registered underground utility protection service \* \* \* been contacted, then the contractor, upon notification to the public authority, is entitled to an increase to the contract price for itself or its subcontractor for any additional work that must be undertaken or additional time that will be required and is entitled to an extension of the

completion date of the contract for the period of time of any delays to the construction of the public improvement.

In the event of a dispute as to the application of this section, procedures may be commenced under the applicable terms of the construction contract, or if the contract contains no provision for final resolution of the dispute, pursuant to the procedures for arbitration in Chapter 2711 of the Revised Code.

This section does not affect rights between the contractors and the public authority for any increase in contract price or additional time to perform the contract when the public authority complies with [d]ivision (B) of this section.

Any public authority who complies with the requirements of [d]ivision (B) of this section and any contractor or its subcontractor who complies with the requirements of [d]ivision (C) of this section shall not be responsible to the owner of the underground utility facility if underground utility lines are encountered not as marked in accordance with the provisions of [d]ivision (C) of this section by the owner of the underground utility facility, unless the contractor or its subcontractor has actual notice of the underground utility facility. Except as noted in this division, this section does not affect rights between the contractor * * * and the owner of the underground utility facility for failure to mark or erroneously marking utility lines. The public authority shall not make as a requirement of any contract for public improvement any change in responsibilities between the public authority and the owners of the underground utility facilities in connection with damage, injury, or loss to any property in connection with underground utility facilities.

The city argues that none of the R.C. 2744.02(B) exceptions to immunity apply here. Specifically, with regard to R.C. 2744.02(B)(5), the city argues that R.C. 153.64 does not expressly impose civil liability on the city, but rather the remedy provided by R.C. 153.64(C) is an adjustment to the contract price. The city argues that this is the sole remedy and CAP has chosen not to avail itself of this remedy.

## B. An Issue of First Impression

{¶ 21} The parties did not present, and this court is not aware of any precedent regarding the issue of whether a municipality is subject to liability for damages pursuant to the R.C. 2744.02(B)(5) exception to immunity by virtue of R.C. 153.64(D). A review of the appeals court opinions regarding cases annotated under R.C. 153.64 in Baldwin's Ohio Revised Code reveals that five of seven cases did not appear to involve a third-party complaint by a contractor against a political subdivision.[2] Two of seven cases did involve a third-party complaint by a contractor against a political subdivision. In one case, the trial court granted

---

2. It is not clear from the appeals courts' opinions whether a third-party complaint was ever filed, or if it was filed, whether sovereign immunity was ever raised as an affirmative defense,

summary judgment in favor of the political subdivision; however, the appeals court does not detail the reasons for the summary judgment.[3] In the other case, the Southwest Licking Community Water and Sewer District ("Southwest") contracted with defendant contractor, Williams Excavating ("Williams"), to perform a sewer construction project. While performing the sewer construction projects, Williams cut underground telephone wires owned by plaintiff utility United Telephone Company ("United"). United sued Williams for damage to the wires. Williams filed a third-party claim against Southwest. *United Tel. Co. v. Williams Excavating* (1997), 125 Ohio App.3d 135, 707 N.E.2d 1188.[4] Third-party defendant Southwest filed an answer and did not raise the affirmative

---

or, if it was raised as an affirmative defense, whether the trial court ruled that sovereign immunity applied and neither the contractor nor the utility decided to appeal the trial courts' determinations. One of these cases included an allegation in the original complaint that plaintiff utility was a third-party beneficiary of the contract between Akron Regional Transit Authority ("RTA") and the contractor defendant. However, it appears RTA was not named as a third-party defendant. *MCI WorldCom Network Servs., Inc. v. W.M. Brode Co.* (N.D.Ohio 2006), 411 F.Supp.2d 804. One case involved a contract with the Ohio Department of Transportation ("ODOT") for road improvements. It appears that ODOT was not named as a third-party defendant. *United Tel. Co. v. C.J. Mahan Constr. Co.* (1989), 63 Ohio App.3d 437, 579 N.E.2d 250. One case involved a contractor engaged in excavation for various public improvements; however, it appears that the contracting public authority was not named as a third-party defendant. *Columbia Gas of Ohio, Inc. v. Crestline Paving & Excavating Co., Inc.*, 6th Dist. No. L–02–1093, 2003-Ohio-793, 2003 WL 397830. In *E. Ohio Gas Co. v. Kenmore Constr. Co.* (March 28, 2001), 9th Dist. Nos. 19567 and 19790, 2001 WL 302818, it appears that a public authority was not named as a third-party defendant. The facts in *Cincinnati Bell Tel. Co. v. Dept. of Transp.*, Ct. of Cl. No. 2002–03741–AD, 2003-Ohio-938, 2003 WL 1084697, differ from the above-mentioned cases in that ODOT is the defendant and performed its own public improvement instead of hiring a contractor to do the work.

3. In *GTE N. Inc. v. Carr* (1993), 84 Ohio App.3d 776, 618 N.E.2d 249, Alexander Local School District ("ALSD") hired the defendant contractor, Carr, to repair a broken underground water line on school premises. While excavating, defendant contractor severed a fiber optic communications cable owned by plaintiff utility, GTE North Incorporated. At the same time he filed his answer to the complaint, defendant contractor also filed a third-party complaint against ALSD seeking indemnity for any amount by which he would be held liable to plaintiff utility. The Court of Appeals opinion states that "ALSD denied any third-party liability and, eventually, a summary judgment was granted in its favor." An effort was made to access the third-party answer, third-party motion for summary judgment, and the trial court's decision on the motion for summary judgment; however, the Athens County Clerk of Courts informed this court that due to the age of the case, these court documents were no longer available. Therefore, this court is not able to determine whether ALSD raised sovereign immunity as an affirmative defense, or, if it did raise sovereign immunity as an affirmative defense, whether a reason for the trial court's grant of summary judgment was a finding that ALSD was immune. It is not possible, without seeing the court documents, to determine if sovereign immunity was even an issue in the case.

4. {¶ a} This court was able to obtain the *United Tel. Co. v. Williams Excavating* (1997), 125 Ohio App.3d 135, 707 N.E.2d 1188, court documents from the Allen County Clerk of Courts. The third-party complaint contains the following counts: To the extent Williams is liable to UTC [United], such liability arises from Southwest's:

defense of sovereign immunity. As the defense was never raised, neither the trial court nor the appeals court had occasion to rule on the issue of whether sovereign immunity applies. The case went to trial on the merits of the claims filed against Southwest in the third-party complaint.

{¶ 22} Therefore, it appears that the issue is one of first impression before the courts of Ohio, at least one of first impression for cases that have been reported by the courts of Ohio.

## C. Discussion of Case Law regarding whether "civil liability is expressly imposed upon the political subdivision by a section of the Revised Code"

{¶ 23} As indicated previously, this court is not aware of any precedent regarding the issue of whether a municipality is subject to liability for damages pursuant to the R.C. 2744.02(B)(5) exception to immunity by virtue of R.C. 153.64(D). A review of case law regarding application of R.C. 2744.02(B)(5) reveals that in many cases, courts determined that liability was not expressly imposed and therefore the exception did not apply. In other cases, where courts determined that liability was expressly imposed, subsequent legislative amendments to R.C. 2744.02(B)(5) overturned the court holdings. Nevertheless, Ohio Supreme Court case law does exist that sheds some light on how the high court interprets R.C. 2744.05(B)(5).

{¶ 24} In 2001, the Ohio Supreme Court held in *Campbell v. Burton*, 92 Ohio St.3d 336, 750 N.E.2d 539, that R.C. 2151.421, mandating the reporting of known or suspected child abuse through its criminal penalty for failure to report in R.C. 2151.99, "expressly imposes liability" pursuant to R.C. 2744.02(B)(5). R.C. 2151.99 stated that "[w]hoever violates * * * division (A)(1) * * * of section 2151.421 of the Revised Code is guilty of a misdemeanor * * *." The holding

---

{¶ b} negligence in failing to mark or mismarking the location of UTC's telephone lines on the project's plans and specifications as originally prepared by Southwest;

{¶ c} negligently misrepresenting the location or absence of UTC's telephone lines on the project's plans and specifications as originally prepared by Southwest;

{¶ d} breach of contract by failing to mark and/or mismarking the location of UTC's telephone lines on the plans and specifications as originally prepared by Southwest;

{¶ e} breach of R.C. 153.64(B) and its negligence in failing to include and/or incorrectly including in the plans and specifications the identity and location of UTC's telephone lines;

{¶ f} breach of warranty to provide plans and specifications that were complete and accurate;

{¶ g} unjust retention of the benefit of services and materials without paying for the same (unjust enrichment).

{¶ h} Williams alleges that as a direct and proximate result of Southwest's negligence, breach of contract, breach of statute, and breach of warranty, and due to the unjust enrichment, Southwest is liable to Williams. Among the several claims for liability there is a claim for contribution arising from the negligence claims.

was a four-three decision, and as indicated previously, in 2003 the General Assembly overruled the court's holding with its amendment to R.C. 2744.02(B)(5) that liability shall not be construed because a section of the Revised Code provides for a criminal penalty. Nevertheless, the decision is still significant for two reasons. First, the Supreme Court gives some indication regarding how it would define the term "liability." Second, Justice Cook's dissent, in which Chief Justice Moyer and Justice Stratton concurred, is significant as it defines the term "expressly."

{¶ 25} Regarding the definition of "liability," the Supreme Court stated that it finds compelling the following: " 'The quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment.' " Id., quoting Black's Law Dictionary (7th Ed.1999) 925. As noted earlier, the General Assembly has since rejected the notion of liability being enforceable by criminal punishment. Further, with the qualifications that liability shall not be construed merely because a section of the Revised Code imposes a responsibility or mandatory duty or because a section uses "shall," the General Assembly has also rejected the notion of mere legal obligation, accountability or responsibility, alone, without something more. That "something more," according to the definition of liability that the Supreme Court finds compelling, is *enforceability by civil remedy.*

{¶ 26} Justice Cook, in her dissenting opinion, states, "When interpreting statutes, we must give words their ordinary and natural meaning unless a different intention appears in the statute." Id. at 344–345, 750 N.E.2d 539, citing *Layman v. Woo* (1997), 78 Ohio St.3d 485, 678 N.E.2d 1217. "The ordinary definition of 'expressly' is 'in direct or unmistakable terms *explicitly,* definitely, directly.' " (Emphasis sic.) Id. at 344–345, 750 N.E.2d 539, citing Webster's Third New International Dictionary (1971) 803. "Thus, the relevant inquiry is whether R.C. 2151.421 unmistakably and explicitly states that a political subdivision or its employee will be liable in tort for a failure to report suspected child abuse." Justice Cook concludes, from this definition, that unless a statute contains an "explicit declaration that the political subdivision * * * can be held liable in a civil action for damages," the R.C. 2744.02(B)(5) exception to immunity cannot be triggered. Id.

{¶ 27} R.C. 153.64 provides something more than a legal obligation, accountability, or responsibility on the part of the city to society or otherwise. It directly, unmistakably, explicitly, definitely, and thus expressly provides enforceability of that obligation, accountability, or responsibility by the civil remedy of an increase to the contract price and an extension of the completion date of the contract. Further, it directly, unmistakably, explicitly, definitely, and thus expressly provides that in the event of a dispute as to application of R.C. 153.64(D), which includes the civil remedy, procedures may be commenced under the applicable

terms of the construction contract, or in the absence of a provision in the contract for final resolution of a dispute, pursuant to the procedures for arbitration in Chapter 2711. It is very clear that procedures could be commenced regarding the civil remedy pursuant to contract. Therefore, according to the Supreme Court's definition of "liability" and Justice Cook's definition of "expressly," this court could conclude that if the contract allows for holding the city liable in a civil action for damages, then it is not immune pursuant to R.C. 2744.02(A) and R.C. 2744.02(B)(5).

### D. Interpretation of R.C. 153.64

{¶ 28} As indicated earlier, sovereign immunity is a creature of statute and therefore this court must look to the statute.

### 1. Rules of Statutory Construction

{¶ 29} "The foremost consideration in determining the meaning of a statute is legislative intent." *State v. Reedy*, 10th Dist. No. 05AP–501, 2006-Ohio-1212, 2006 WL 648861, citing *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68. " 'To determine the legislative intent, we first review the statutory language, * * * [according] the words used their usual, normal, or customary meaning.' " *Reedy*, at ¶ 12, quoting *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 724 N.E.2d 771. "When plain and unambiguous statutory language conveys a clear and definite meaning, there is no need for courts to apply rules of statutory interpretation; the court must give effect to the words used." *Reedy*, at ¶ 12, citing *State ex rel. Jones v. Conrad* (2001), 92 Ohio St.3d 389, 750 N.E.2d 583; *State v. Elam* (1994), 68 Ohio St.3d 585, 629 N.E.2d 442. " 'In reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body.' " *Jackson*, at ¶ 34, quoting *State v. Wilson*, 77 Ohio St.3d 334, 673 N.E.2d 1347 (1997); *MacDonald v. Bernard* (1982), 1 Ohio St.3d 85, 1 OBR 122, 438 N.E.2d 410.

{¶ 30} The court will now look at the words of the statute and the four corners only to determine if the language is plain and unambiguous and conveys a clear and definite meaning.

{¶ 31} R.C. 153.64(D) is very clear, definite, and unambiguous in providing for a remedy in the event that the city fails to comply with the requirements of R.C. 153.64(B). The remedy is an increase in the contract price for any additional work that must be undertaken or for additional time that will be required and an extension of the completion date for the contract for the period of time of any delays to the construction of the public improvement. R.C. 153.64(D) is also very clear, definite, and unambiguous in providing for procedures that the parties may pursue in the event there is a dispute. The parties must first commence

procedures pursuant to the applicable terms of the construction contract. If the construction contract contains no provision for final resolution of the dispute, the parties may then pursue arbitration in R.C. Chapter 2711.

{¶ 32} The four corners of R.C. 153.64 also must be examined. The court notes in particular the first sentence of the fourth paragraph of division (D), which states, "Any public authority who complies with the requirements of division (B) of this section and any contractor * * * who complies with the requirements of division (C) of this section *shall not be responsible to the owner of the underground utility facility* if the underground utility lines are encountered not as marked in accordance with the provision of [d]ivision (C) of this section by the owner of the underground utility facility, unless the contractor * * * has actual notice of the underground utility facility." (Emphasis added.) The reverse of this sentence is that a public authority who does not comply with division (B) could be held responsible. The sentence that follows in the fourth paragraph suggests that the General Assembly contemplated the reverse, as it states, "The public authority shall not make as a requirement of any contract for public improvement any change in responsibilities between the public authority and the owners of the underground utility facilities in connection with damage, injury or loss to any property in connection with underground utility facilities." With this in mind, consider such a scenario. A contractor is found to comply with division (C) and to have had no actual notice of the underground utility facility; therefore, pursuant to the fourth paragraph of R.C. 153.64(D), he can not be held responsible to the utility owner. A utility owner is found to comply with its obligations under division (C). A public authority, however, is found to have not complied with division (B). To find a public authority to be immune from damages, in such a scenario, would change the responsibilities between the public authority and the utility owner in connection with damage, injury, or loss to any property in connection with underground utility facilities, as the utility owner would be left responsible for the damages, injury, and loss to property, even though it complied with its statutory obligation. If the General Assembly expressly forbids the public authority and the utility owner to create such a scenario via contract, it would be illogical to assume they intended to create such a scenario via statutory immunity.

{¶ 33} The clear, definite, and unambiguous words and the four corners of R.C. 153.64 indicate that the General Assembly did not intend for public authorities to be immune from civil liability for damages.

### 2. Where the General Assembly has found that "civil liability is expressly imposed"

{¶ 34} In interpreting R.C. 153.64 to determine whether it expressly imposes civil liability on the city, the court will also look to R.C. 2744.02(B)(5) for

examples of where the General Assembly has determined that "civil liability is expressly imposed."

{¶ 35} R.C. 2744.02(B)(5) specifically states that R.C. 2743.02 and R.C. 5591.37 expressly impose civil liability on a political subdivision.

{¶ 36} R.C. 2743.02(A)(1) states as follows:

The state hereby *waives its immunity from liability* * * * and *consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties,* except that the determination of liability is subject to the limitations set forth in this chapter * * *. To the extent that the state has previously consented to be sued, this chapter has no applicability. [Many limitations and exceptions follow this waiver of immunity in Division (A)(1) ].

(Emphasis added.)

{¶ 37} R.C. 2743.02(B) states as follows:

The state hereby *waives the immunity from liability* of all hospitals owned or operated by one or more political subdivisions and *consents for them to be sued, and to have their liability determined, in the court of common pleas, in accordance with the same rules of law applicable to suits between private parties,* subject to the limitations set forth in this chapter. This division is also applicable to hospitals owned or operated by political subdivisions which have been determined by the supreme court to be subject to suit prior to July 28, 1975.

(Emphasis added.)

{¶ 38} R.C. 5591.37 states as follows:

Negligent failure to comply with section 5591.36 [regarding guardrails for bridge or steep embankment] of the Revised Code *shall render the county liable* for all accidents or damages resulting from that failure.

(Emphasis added.) The court notes that the language of R.C. 153.64(D) does not specifically use the terms "waive" and "liability" or "liable." Nor does it include consent to be sued in a court. However, R.C. 153.64(D) does specifically state that in the event of dispute, "procedures may be commenced under the applicable terms of the construction contract." Therefore, this court could conclude that if the construction contact provides for waiver of liability and consent to be sued in a court, the city could be held civilly liable in damages.

3. **Where the General Assembly has *not* found that "civil liability is expressly imposed"**

{¶ 39} R.C. 2744.02(B)(5) specifically states:

Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

Initially, the R.C. 2744.02(B)(5) exception was qualified by the limitation that liability could not be construed to exist merely because a responsibility is imposed on a political subdivision or a general authorization is given that the political subdivision may sue or be sued. The General Assembly then amended the exception to further qualify it to reiterate that liability is not imposed merely because another section of the Revised Code uses the term "shall" or because criminal penalty may result for failure to comply with a section. These amendments overruled several cases in which courts had found that express liability existed. Gotherman, Babbit and Lang, Baldwin's Ohio Practice, Local Government Law, Local Government Tort Liability Act, Section 32:4.[5]

{¶ 40} R.C. 153.64, in division (B), does impose a responsibility or mandatory duty on the city. The same division (B) also uses the term "shall." Furthermore, it is possible that the construction contract, to which R.C. 153.64(D) defers in the event of dispute, consents to sue or be sued. Therefore, R.C. 153.64 does not "merely" have just one of the four qualifications noted above; rather, it has three of the four qualifications. In addition, R.C. 153.64(D) provides *something more*. It specifically provides for an increase in the contract price and an extension of the contract completion date. It further provides, in the event of dispute, for resolution pursuant to the terms of the construction contract, or in the absence of applicable provisions in the construction contract, pursuant to the arbitration procedures in R.C. Chapter 2711. Therefore, the court concludes that R.C. 153.64 contains much more than a mere R.C. 2744.02(B)(5) qualification.

### E. R.C. 153.64 May Expressly Impose Civil Liability on the City Pursuant to Contract and therefore the Exception to Immunity Found in R.C. 2744.02(B)(5) Could Apply and the City would not be Immune from Damages as a Matter of Law

{¶ 41} In consideration of the statutes and case law analyzed in this section, this court concludes that R.C. 153.64(D) may expressly impose civil liability

---

5. The qualification regarding imposition of a criminal penalty went into effect April 19, 2003, and superceded the Supreme Court's holding in *Campbell v. Burton* (2001), 92 Ohio St.3d 336, 750 N.E.2d 539. *Campbell v. Burton* is discussed in more detail in section VI.C of this decision and entry.

pursuant to contract on the city and, therefore, the exception to immunity found in R.C. 2744.02(B)(5) could apply and the city is not immune from damages pursuant to R.C. 2744.02(A) as a matter of law. The court further notes that it is required to decide a motion for judgment on the pleadings on the pleadings only. The court is not permitted to look beyond the pleadings.[6] The court simply construes the material allegations in the complaint, with all reasonable inferences, in favor of the nonmoving party, CAP, as true. In doing so, this court does not find beyond doubt that CAP could prove no set of facts in support of its claim that would entitle CAP to relief. Therefore, this court concludes that the city is not immune from liability for damages as a matter of law as there may be an exception to immunity that applies here.

## VII. Third Tier Analysis: If an Exception to Immunity Exists, Is It Reinstated by a Defense Contained in R.C. 2744.03?

{¶ 42} R.C. 2744.03 lists seven defenses or immunities that a political subdivision may assert to establish nonliability in a civil action to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function.

{¶ 43} In its motion for judgment on the pleadings, the city relied on its argument that the R.C. 2744.02(B)(5) exception to liability did not apply and asserted that it is not necessary to consider whether one of the R.C. 2744.03 defenses or immunities applies to establish nonliability. The city did not propose any defense or immunity in the event the court found that the R.C. 2744.02(B)(5) exception applies. Therefore, the court finds that no defense or immunity exists to establish the city's nonliability.

## VIII. Conclusion

{¶ 44} For the reasons outlined above, the court denies third-party defendant city of Westerville's motion for judgment on the pleadings. The court's entry and decision regarding the city of Westerville's motion for summary judgment is forthcoming.

{¶ 45} Pursuant to R.C. 2744.02(C), the above order does constitute a final, appealable order.

So ordered.

---

6. CAP did provide to the court a copy of the construction contract with its combined memorandum in opposition to the motions for summary judgment and judgment on the pleadings. Although it appears that clause 11020.01, regarding acceptance of final payment as release, does allow for claims against the city for every act and neglect in connection with the street reconstruction work, the court does not consider this clause in making its determination.